# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| MARVIN COSEY, as the Guardian of AMIYAH S. COSEY, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:25-CV-09400 |
| v. | ) ) | Judge Sharon Johnson Coleman |
| GLOBAL BLOOD THERAPEUTICS, INC. and PFIZER INC., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Amiyah S. Cosey ("Plaintiff"), through her guardian, Marvin Cosey, filed suit against Defendants,' Global Blood Therapeutics, Inc., and Pfizer, Inc. (together, Defendant's) to recover damages for injuries Plaintiff sustained in connection with her ingestion of Oxbryta (or "Voxelotor"), a prescription medication used to treat sickle cell disease ("SCD") that Defendants designed, distributed, and marketed. Defendants presently move to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6)("Motion"), asserting Plaintiff's claims are preempted by federal law and otherwise insufficient. For the reasons stated herein, the Court grants Defendants' Motion [19].

## BACKGROUND

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). Unless otherwise noted, the following factual allegations are taken from Plaintiff's Complaint ("Complaint"), (Dkt. 1), and are assumed true for purposes of this Motion. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

### A. SCD and Oxbryta Background

1

SCD, or Sickle Cell Anemia, is a group of inherited disorders that affect hemoglobin, the major protein that carries oxygen in red blood cells. Individuals who have SCD have red blood cells that are misshaped, typically crescent or "sickle" shaped due to a gene mutation that affects the hemoglobin molecule. When red blood cells sickle, they do not bend or move easily and can block blood flow to the rest of the body. SCD can cause serious problems, including sudden onset of strong pain, called pain crisis, that occur because of blocked blood flow and often require medical attention. These pain episodes are also called "sickle cell crisis" and vaso-occlusive crises ("VOCs"). Individuals who have SCD may also experience other serious health complications such as chronic pain, stroke, lung problems, eye problems, infections, and kidney disease.

Oxbryta is an oral, once-daily therapy for patients with SCD that works by increasing hemoglobin's affinity for oxygen. Oxbryta inhibits sickle hemoglobin polymerization and the resultant sickling and destruction of red blood cells. Defendant Global Blood Therapeutics called Oxbryta a "first-of-its-kind tablet that treats sickle cell…" and would lead to "less sickling" by "addressing sickling at this source." In 2019, the U.S. Food and Drug Administration ("FDA") granted accelerated approval for Oxbryta tablets for the treatment of SCD in adults and children ages 12 years and older. In December 2021, the FDA expanded the approved use of Oxbryta for the treatment of SCD in patients 4 years of age and older in the U.S.

On September 25, 2024, however, Pfizer Inc. announced that it was voluntarily withdrawing all lots of Oxbryta for the treatment of SCD. That same day, Pfizer Inc. also announced that it was discontinuing all active Oxbryta clinical trials and expanded access programs worldwide. Pfizer's decision to withdraw Oxbryta from the market was based on the totality of the clinical data that indicated the overall benefit of Oxbryta did not outweigh the risk in the approved sickle cell patient population. The data suggested occurrences of VOCs and fatal events that required further assessment.

### B. Plaintiff's Oxbryta Use

Plaintiff was prescribed Oxbryta to treat her SCD from January 2022 until approximately September 2024. Plaintiff alleges, as a result of Plaintiff's ingestion of Oxbryta, she had a VOC on or about June 1, 2024. Plaintiff additionally alleges she suffered severe physical pain, permanent injuries, emotional distress and economic damages as a result of using Oxbryta.

In the present Complaint, Plaintiff asserts, had any Defendant warned her that Oxbryta could increase the risk of VOCs, she would not have taken the drug. Based on Defendants' alleged actions and inactions, Plaintiff brought the following claims: (I) design defect, (II) failure to warn, (III) negligence, (IV) breach of express warranties, (V) breach of implied warranties, and (VI) punitive damages. Through its opposition to Defendants' MTD, Plaintiff voluntarily withdrew her punitive damages claim. As such, Counts I-V remain before the Court.

### LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### DISCUSSION

In their Motion, Defendants argue Plaintiff's design-based theories—whether sounding in strict liability or negligence—are preempted by federal law. (Dkt. 19 at *1) Defendants explain, the heart of Plaintiff's design defect theory is that the composition of Oxbryta is defective, and that Defendants should have altered Oxbryta's composition or adopted some (unspecified) safer design.

But federal regulations prohibit Defendants from making "major changes" to the formulation of Oxbryta or to its active ingredient without the FDA's express prior approval. (*Id.*) Because Defendants cannot satisfy the state-law duties Plaintiff seeks to impose without the FDA's advance permission, Defendants argue Plaintiff's product design defect claim is preempted and should be dismissed. (*Id.*)

Defendants similarly argue that Plaintiff's failure to warn claims are preempted by federal law. Defendants explain, under U.S. Supreme Court precedent, state-law failure-to-warn claims against a pharmaceutical manufacturer are preempted unless the defendant can unilaterally change the medication's label under an FDA regulation called "Changes Being Effected" ("CBE"). (*Id.* at *2.) Here, that regulation would have required "newly acquired information" establishing that Oxbryta caused an increased risk of VOCs, which Plaintiff cannot allege. (*Id.*) Accordingly, Defendants assert the Court should dismiss all of Plaintiff's claims.

Plaintiff, by contrast, argues the Court should deny Defendants' Motion in its entirety because her claims are not preempted and are otherwise sufficient. The Court addresses each of these arguments in turn.

## I. Preemption Analysis

Under the Supremacy Clause, state laws that conflict with federal law are "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). Even in the absence of an express pre-emption provision, a state law may be impliedly pre-empted where it is "impossible for a private party to comply with both state and federal requirements." *Mut. Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 472–73 (2013).

## A. Design Defect Claim (Count I)

Under Illinois law, "[t]o recover in strict liability, [an] injury must result from a condition of the product, the condition must be "unreasonably dangerous", and the condition must have existed at the time the product left the manufacturer's control." *Hicks v. Boston Sci. Corp.*, 28 Fed. Appx. 583,

584 (7th Cir. 2002). A product may be unreasonably dangerous as a result of (1) a manufacturing defect—that is, a physical defect in the individual product itself, (2) a defect in the product's design, or (3) the manufacturer's failure to warn of a known danger associated with the product or to instruct the consumer on the proper use of the product. *Donaldson v. Johnson & Johnson*, 37 F.4th 400, 407 (7th Cir. 2022). Plaintiff asserts that, amongst other issues, Oxbryta was unreasonably dangerous due to a design defect. (Dkt. 24 at *8.)

In their motion, Defendants explain, the gravamen of Plaintiff's "design defect" theory is that Voxelotor, the active molecule in Oxbryta, (as approved by the FDA), was defective because it "posed a grave risk of VOC and other serious illnesses." (Dkt. 18 at *8.) Defendants argue, because this claim runs squarely into the requirements of the Federal Food Drug and Cosmetic Act ("FDCA"), which requires FDA approval for Defendants to change the drug's chemical composition, Plaintiff's design defect claim is preempted. Defendants assert, because the Complaint fails to explain Defendants could have alleviated the alleged design defect without the FDA's prior approval, the Court should dismiss Plaintiff's claim. In opposition, Plaintiff argues Defendants could have employed a safer alternative design and formulation and that Defendants could have sought preapproval from the FDA to alter Oxbryta. *See* (Dkt. 24 at *4.) Plaintiff also notes that nothing on the record suggests the FDA would have rejected a requested alteration to Oxbryta's formulation. *See* (*id.* at *6-7.) Plaintiff concludes that her design defect claim is not preempted because it was possible for Defendants to comply with both federal and state law by initially submitting an alternative design before Oxbryta was ever approved by the FDA or by applying for an alternative design after Oxbryta was approved.

Despite Plaintiff's assertions, her design defect claim is preempted because Defendants could not have unilaterally changed the design or composition of Oxbryta without the FDA's prior approval. *See Mut. Pharm. Co.*, 570 U.S at 490. In *Mutual Pharmaceutical Company v. Bartlett*, the Supreme Court held that "state-law design-defect claims" that "place a duty on manufacturers to render a drug safer"

5

by "altering its composition" are "in conflict with federal laws that prohibit manufacturers from unilaterally altering drug composition." *Id.* As is the case here, any modification to the composition of the drug would create a new drug that would require independent approval by the FDA to be marketed in interstate commerce. *Id.* at 484. Since any design change would have required express FDA approval, Plaintiff's design defect claim cannot survive.

Because Plaintiff's design defect claim is preempted by federal law, the Court dismisses this claim with prejudice.

## B. Failure-to-Warn Claims (Count II, IV, and V)

Drug manufacturers generally seek advance permission from the FDA to make substantive changes to their drug labels. However, the CBE regulation permits drug manufacturers to change a label without prior FDA approval if the change is designed to "add or strengthen a ... warning" where there is "newly acquired information" about the "evidence of a causal association" between the drug and a risk of harm. 21 C.F.R. § 314.70(c)(6)(iii)(A); *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 304–05 (2019). State laws requiring a label change are preempted unless the manufacturer could unilaterally add the new warning under the CBE regulation. *Dolin v. GlaxoSmithKline LLC*, 901 F.3d 803, 814 (7th Cir. 2018). And even then, the FDA has final authority to reject any label changes after a manufacturer makes them. *See id.* at 806. Accordingly, to avoid preemption of a failure-to-warn claim "based on [the manufactuer's] ability to change the . . . label after the FDA approved it," a plaintiff must show "three things were true: (1) [the manufacturer] had newly acquired information about [the drug] (2) that showed a causal association (3) between the drug and an effect that warranted a new or stronger warning." *Id.*

Defendants argue Plaintiff's failure-to-warn, breach of express warranties, and breach of implied warranties claims, which all rely on allegations that Defendants failed to include information on Oxbryta's label about the supposed "increased risk of VOCs" associated with use of Oxbryta, are

6

also preempted by federal law. (Dkt. 19 at *10.) Defendants emphasize that the Plaintiff's VOC predates the September 2024 data that Defendants relied on to fully withdraw Oxbryta from the market. *See* (*id.* at *11.) As such, Defendants argue Plaintiff's claims are foreclosed since the Complaint does not allege facts demonstrating that any "newly acquired" analysis of this data was available to Defendants with sufficient time to initiate a label change before they withdrew the product. (*Id.*) (citing *Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 735 F. Supp. 3d 352, 388 (S.D.N.Y. 2024) (dismissing failure-to-warn claim where "Plaintiffs fail[ed] to plausibly allege that Defendant was in possession of that newly acquired information at any point prior to its decision to recall [the drug]" and observing that the defendant "opt[ed] to address the issue with a recall, rather than an application pursuant to the CBE process")).

Plaintiff, by contrast, argues, at the time of Defendants manufacture of Oxbryta, the label did not contain adequate warnings or instructions concerning the dangerous characteristics of Oxbryta. (Dkt. 24 at *9.) Plaintiff asserts, Defendants could have disclosed the dangers of Oxbryta because they knew or should have known of the unreasonable risks of harm associated with its use. (*Id.* at *9-10.) Plaintiff explains, "Federal Regulations are clear that a drug manufacturers responsibility to adequately warn the public, medical professionals and the FDA … subsists during the period when the drug is on the market after FDA approval. (Id. at *10) (citing *In re Accutane Litigation*, 235 N.J. 229, 194 A. 3d 503 (2018)). Plaintiff further asserts, Defendants' own admission that it was possible to change the label through the CBE process, dooms their argument that Plaintiff's claims are automatically preempted. (Dkt. 24 at *11.) Plaintiff concludes, while unilateral change through the CBE process is only allowed in narrow circumstances, Defendants' failure-to-warn about the risk of Oxbryta meets such circumstances.

As an initial matter, Plaintiff is correct that her failure-to-warn claims are not automatically preempted since manufacturers can unilaterally change their labels through the CBE process. A drug

manufacturer is charged both with crafting an adequate label and with ensuring that its warnings remain adequate as long as the drug is on the market. *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 312 (2019). In the 2007 Amendments to the FDCA, Congress "reaffirmed the manufacturer's obligations and referred specifically to the CBE regulation, which both reflects the manufacturer's ultimate responsibility for its label and provides a mechanism for adding safety information to the label prior to FDA approval. *Id.* The Supreme Court addressed this specific issue in *Wyeth v. Levine*, holding that state-law claims based on labeling deficiencies are not preempted if the manufacturer could have added the warning unilaterally under the CBE regulation. 555 U.S. 555, 573 (2009) (finding that defendant had "failed to demonstrate that it was impossible for it to comply with both federal and state requirements" when the "CBE regulation permitted" defendant "to unilaterally strengthen its warning" on its brand-name drug). Preemption can still be found, however, if the manufacturer meets the stringent standard of proving that there was clear evidence the FDA would have rejected the proposed change in the drug's label. *See Dolin v. GlaxoSmithKline LLC*, 901 F.3d 803, 811–12 (7th Cir. 2018) (finding preemption where and the FDA rejected a manufacturer's CBE supplemental warning and denied the manufacturer's four follow-up request to reconsider the denial). Here, absent evidence that the FDA rejected a CBE supplement or indicated that it would reject any supplement for Oxbryta, Defendants cannot support their contention that a unilateral label change was "impossible."

Unfortunately for Plaintiff, however, her failure-to-warn claims fail on the merits since she fails to allege "newly acquired information" that would have permitted unilateral modification to Oxbryta's label under the CBE regulation. FDA regulations define "newly acquired information" to include "data, analyses, or other information not previously submitted to [FDA]" which "reveal risks of a different type or greater severity or frequency than previously included in submissions to FDA." 21 C.F.R. § 314.3. While the Complaint cites September 2024 clinical data suggesting a "higher rate

8

of vaso-occlusive crisis" in patients taking Oxbryta—the exact time when Defendants voluntarily withdrew the medication from the market—the Complaint does not allege facts demonstrating that any "newly acquired" analysis of this data was available to Defendants with sufficient time to initiate a label change before the product was withdrawn from the market. In fact, the pleading suggests that once Defendants became aware of this data, they opted to address the issue with the more drastic measure of recall, as opposed to a label change pursuant to the CBE process. Plaintiff's conclusory allegations that Defendants possessed "newly acquired information" about risks of Oxbryta, without identifying what that "newly acquired information" was or how it demonstrated a risk of a different type or greater severity than what the FDA already considered, does not suffice to undermine preemption. Since Plaintiff failed to identify any newly acquired information that shows Defendants were aware of an increased VOC risk, with sufficient time to initiate a label change before they withdrew the product, Plaintiff's failure-to-warn claims fail.

### C. Negligence Claim (Count III)

In her negligence claim, Plaintiff argues Defendants had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Oxbryta, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers and users of the product. (Dkt. 24 at *13.) Defendants argue Plaintiff's negligence claims also fail with her design defect and failure-to-warn claims, based on preemption grounds, because Defendants could not re-design Voxelotor or modify Oxbryta's label without the FDA's approval. (Dkt. 19 at *12.) In opposition, Plaintiff argues that Defendants could have made unilateral changes to redesign Oxbryta and its drug label through the CBE process and thus, any request to dismiss Plaintiff's negligence claims, should be denied. (Dkt. 24 at *12-13.)

9

Again, for the reasons already stated herein, any claim regarding the formulation of Oxbryta, is preempted. Additionally, because Plaintiff fails to identify "newly acquired information" that would allow Defendants to modify their label through the CBE process, any failure-to-warn claims also fail. Although Plaintiff styles her claim in negligence, she still cannot overcome preemption. *See Greager v. McNeil-PPC, Inc.*, 414 F. Supp. 3d 1137, 1143 (N.D. Ill. 2019) (Alonso, J.) (quoting *Wagner v. Teva Pharms. USA, Inc.*, 840 F.3d 355, 358–59 (7th Cir. 2016)) ("Because all of plaintiff's claims against the moving defendants involve the same failure to warn or improve the product, they are all preempted, 'regardless of how they are styled in her complaint.'"). Accordingly, Plaintiff's negligence claim falls with her design defect and failure-to-warn claim absent any proof that Defendants acquired new information with enough time to use the CBE regulation for a label change, prior to withdrawing the medication from the market.

## II. Remaining 12(b)(6) Analysis

Notwithstanding the Court's determination that Plaintiff's claims are preempted by federal law, Defendants argue that Counts II-V are also preempted based on the learned intermediary doctrine. For purposes of completeness, the Court addresses this issue. Under Illinois' learned intermediary doctrine, a "manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use." *Kirk v. Michael Reese Hosp. & Med. Ctr.*, 117 Ill. 2d 507, 518, 513 N.E.2d 387, 392 (1987). Accordingly, there is no duty on the part of manufacturers of prescription drugs to directly warn patients. *Id.* at 519.

Defendants argue, because the Complaint includes no facts pertaining to Ms. Cosey's physician, and thus includes no facts addressing whether or not different information or warnings would have changed the physician's decision to prescribe Oxbryta, Plaintiffs claims fail. (Dkt. 19 at *13) (citing *Fisher v. Bristol-Myers Squibb Co.*, 181 F.R.D. 365, 370 (N.D. Ill. 1998) (Aspen, J.)(noting that a plaintiff alleging failure-to-warn must "show that [their] physician would not have prescribed

10

[the drug] if the defendants had provided adequate warnings")).  Plaintiff, in opposition, argues that Defendants' learned intermediary defense is premature.  Plaintiff asserts that she should be provided with an opportunity to provide sworn testimony, on the record, of her prescribing physician showing that had that physician been aware of the dangers of Oxbryta, they would not have prescribed it to Plaintiff.  (Dkt. 24 at *11)  Plaintiff explains, if a warning is inadequate and the risk is not widely-known within the medical community, which Plaintiff alleges in opposition, the learned intermediary doctrine does not shield the manufacturer from liability.  (*Id.* at *12)  *See e.g. Hansen v Baxter Healthcare Corp.*, 198 Ill. 2d 420, 764 N.E. 2d 35, 43 (2002).

While Plaintiff is correct that she could contest the applicability of the learned intermediary doctrine, the deficiencies in her pleadings foreclose such objection.  The allegations, as pled, contain zero facts regarding Plaintiff's prescribing physician.  Plaintiff cannot argue that, if properly warned, her physician would have altered her prescription, where her allegations make no mention of her physician at all.  Accordingly, her claims independently fail based on the learned intermediary doctrine. *See, e.g., Aquino v. C.R. Bard, Inc.*, 413 F. Supp. 3d 770, 789–90 (N.D. Ill. 2019)(Durkin, J.) (dismissing failure-to-warn claims at the motion-to-dismiss stage where the complaint fails to allege facts establishing that the manufacturer-defendant breached a duty to warn the plaintiff's physician).

The Court dismisses this claim without prejudice, however, since with amendment, it is plausible that Plaintiff can allege if properly warned, her physician would not have prescribed Oxbryta.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint [19] is granted.  Plaintiff's design defect claim is dismissed with prejudice, and the remaining claims are dismissed without prejudice until and if Plaintiff can sufficiently allege that Defendants acquired new information with enough time to use the CBE regulation for a label change, prior to withdrawing the medication form the market and that she can overcome the learned intermediary doctrine.  For the

11

claims dismissed without prejudice, Plaintiff is granted leave to amend her Complaint within 30 days if she has a good faith basis for believing she can cure the pleading deficiencies identified in this Opinion. If Plaintiff does not file her amended complaint within 30 days from the date of this Opinion, Plaintiff's case will be dismissed with prejudice.

**IT IS SO ORDERED.**

Date: 7/27/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge